**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **KENNETH B. MCINTOSH, et al.,** § | |
| Plaintiffs, § | |
| § | |
| v. § | **Civil Action No. 3:12-CV-4336-BH** |
| § | |
| **BANK OF AMERICA, N.A., et al.,** § | |
| Defendants. § | **Consent Case** |

**MEMORANDUM OPINION AND ORDER**

By order filed March 25, 2013, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. (*See* doc. 14.) Before the Court is *Defendants' Motion to Dismiss*, filed November 5, 2012 (doc. 4). Based on the relevant filings and applicable law, the motion is **GRANTED.**

**I. BACKGROUND**

This action involves attempted foreclosure of real property located at 625 Wentworth Drive, Richardson, Texas 75081 (the Property). (docs. 1-1 at 6; 4-3 at 1, 6.)[1] On October 1, 2012, Kenneth B. McIntosh and Iweeta McIntosh (Plaintiffs) filed suit against Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP (BANA) and Federal National Mortgage Association, Fannie Mae Remic Trust 2010-28 (Fannie Mae) (collectively, Defendants) in the 134th Judicial District Court of Dallas County, Texas. (doc. 1-1 at 5.)

Plaintiffs' verified state court petition alleges that on February 22, 2010, they obtained a mortgage loan from BANA. (*Id.* at 9.) They executed a promissory note and a deed of trust

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

securing the note in BANA's favor. (docs. 1-1 at 9; 4-3 at 1–19.) Both the note and deed of trust named BANA as "Lender." (doc. 4-3 at 1, 5.) The loan documents were "given in renewal and extension" of an existing obligation in favor of "Countrywide Bank, FSB." (*Id.* at 19.) The deed of trust designated Lender as "the beneficiary" with legal title to the Property and the power of sale. (*Id.* at 5.) It stated that the loan could "be sold one or more times without prior notice to Borrower," which would "result in a change in the entity ... known as the 'Loan Servicer.'" (*Id.* at 14.) Lender could, "at its option and with or without cause ... from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee ... without ... any formality other than a designation by Lender in writing." (*Id.* at 15.)

In April 2010, BANA assigned the mortgage servicing rights to BAC. (*See* doc. 4-3 at 20.) On May 12, 2011, BANA, through its "attorney-in-fact", assigned the deed of trust to BAC. (doc. 1-1 at 48.) The assignment document identified BANA as "the mortgagee of record" and stated that "for value received" BANA transferred to BAC "all [the] rights accrued and to accrue under [the] Loan Agreement." (*Id.*) The assignment was electronically filed with the Dallas County Clerk on June 9, 2011. (*Id.* at 48–49.) On June 15, 2011, BANA's attorney-in-fact executed an appointment of substitute trustee. (*Id.* at 50.) The appointment was also filed with the Dallas County Clerk. (*Id.*)

Plaintiffs claim that BANA was not the "true lender"; it was "a naked nominee whose name was rented by an undisclosed third [party]." (doc. 1-1 at 9–10.) They assert Defendants engaged in fraud by "falsely" naming BANA as Lender on the loan documents and "deliberately omitt[ing] the name of the real lender/creditor." (*Id.* at 13.) Because they did not receive consideration from BANA, no contract was formed between them and BANA. (*Id.* at 10.) They also claim the assignment and the appointment of substitute trustee were fraudulent because BANA had no

2

authority to execute them and because its attorney-in-fact was a "robo-signer"[2] with "multiple false signatures." (*Id.* at 12–15.) In addition, "both documents were falsely notarized by ... an employee" of the attorney-in-fact's law firm. (*Id.* at 12.) They concede BANA could be "at best" Fannie Mae's mortgage servicer, but claim that even in that capacity BANA did "not have the authority to appoint a substitute trustee." (*Id.* at 16.)

With regard to Fannie Mae, Plaintiffs contend that it allegedly claims to have acquired their loan seven days after they closed on it and three days before the deed of trust naming BANA as the Lender and beneficiary was filed. (*Id.* at 12.) Yet, documents from the securitization trust "clearly state" that the trust owns their loan. (*Id.*) Plaintiffs dispute Fannie Mae's and the trust's ownership of the loan, arguing that there is no recorded assignment evidencing BANA's sale or transfer of the loan to either entity. (*Id.*) Further, there is a cloud on their title because BANA, Fannie Mae, and the trust all claim to have an interest in the Property. (*Id.* at 20.) They contend only a "full and accurate accounting" will determine which of these parties has a valid claim. (*Id.*) [3]

Plaintiffs assert claims against Defendants for fraud and violations of the Texas Deceptive Trade Practices Act (DTPA). (*Id.* at 21–23.) They seek declaratory judgment, injunctive relief to

---

[2] "Robo-signing" is:
> [T]he colloquial term the media, politicians, and consumer advocates have used to describe an array of questionable practices banks deployed to perfect their right to foreclose in the wake of the subprime mortgage crisis, practices that included having bank employees or third-party contractors: (1) execute and acknowledge transfer documents in large quantities within a short period of time, often without the purported assignor's authorization and outside of the presence of the notary certifying the acknowledgment,[4] and (2) swear out affidavits confirming the existence of missing pieces of loan documentation, without personal knowledge and often outside of the presence of the notary.

*Reinagel v. Deutsche Bank Nat. Trust Co.*, No. 12-50569, 2013 WL 3480207, at *2 (5th Cir. July 11, 2013) (citations omitted).

[3] Plaintiffs also allege the note was pooled with other notes and transferred into the "2010-28 Trust" to be "converted" into saleable mortgage-backed securities. (doc. 1-1 at 19.) This allegedly extinguished the note by causing it to be deleted from the Lender's balance sheet. (*Id.*) By being "converted into a stock as a permanent fixture" the note is now "governed ... [by] the rules and regulations of the [Securities and Exchange Commission]." (*Id.*) Plaintiffs do not support any of their claims for relief with these allegations. (*See id.* at 9–29.)

3

enjoin Defendants from foreclosing and taking possession of the Property, attorney's fees, actual and "treble" damages, and court costs. (*Id.* at 23–29.)

On October 1, 2012, the state court issued a temporary restraining order (TRO) restraining Defendants from foreclosing on the Property. (*Id.* at 52–54.) On October 29, 2012, Defendants removed the case to this Court asserting diversity jurisdiction under 28 U.S.C. § 1332(a) (doc. 1), and they moved to dismiss the complaint on November 5, 2012 (doc. 4). With a timely-filed response (docs. 7–9), the motion is now ripe for determination.

## II.  RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 4.)

**A.**  **Rule 12(b)(6) Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A]

4

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented

to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725. It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs have attached to their complaint copies of what they contend are the deed of trust, BANA's assignment to BAC, BANA's appointment of substitute trustee, and information they obtained from Fannie Mae's website. (doc. 1-1 at 32–51.) These documents are considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. Plaintiffs have also included within their complaint portions of what they claim are public documents bearing BANA's attorney-in-fact's various signatures and titles, additional documents they obtained from Fannie Mae's website, and what appear to be computer print-outs bearing the title "Bloomberg Markets." (*See* doc. 1-1 at 12, 15, 17–19.) These are also considered part of the pleadings. *See Katrina Canal*

*Breaches Litig.*, 495 F.3d at 205.[4] In addition, Defendants have attached to their motion to dismiss copies of what they claim are the promissory note and deed of trust, as well as a "notice of assignment, sale[,] or transfer of servicing rights" BANA sent Plaintiffs in 2010. (doc. 4-3 at 1–21.) These documents are referenced in Plaintiffs' complaint and are central to their claims, they are therefore considered part of the pleadings. *See Collins*, 224 F.3d at 498. Because the documents that are being considered for purposes of Defendants' motion to dismiss are part of the pleadings, conversion of the motion into a motion for summary judgment is unnecessary. *See Norris*, 500 F.3d at 461 n. 9.   **B.      Texas Deceptive Trade Practices Act[5]**

Defendants seek dismissal of Plaintiffs' claims under the DTPA arguing that Plaintiffs are not "consumers" as defined by the Act. (doc. 4-1 at 4.)

The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see also* Tex. Bus. & Com. Ann. Code § 17.50(a)(1) (West 2011). As to the first element, the DTPA defines a "consumer" in relevant part, as "an individual ... who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. §

---

[4] Plaintiffs attached to their response to Defendants' motion to dismiss what they contend are documents evidencing that "Fannie Mae does not have any control over the underlying notes within a mortgage-backed security." (docs. 8 and 9.) These documents are not considered because they are not part of the pleadings. *See Preston v. Seterus, Inc.*, No. 3:12-CV-2395-L, 2013 WL 1091272, at *13 (N.D. Tex. Mar. 15, 2013) (declining to consider documents attached to the plaintiffs' response in relation to the defendants' motion to dismiss because the documents "were not attached to [the] Plaintiffs' Complaint or [the] Defendants' motion") (citing to *Collins*, 224 F.3d at 498–99; *Spivey*, 197 F.3d at 774). Even if considered, these documents do not dispose of the issues raised by the parties and appear to be duplicative of documents attached to the complaint. (*See, e.g.*, docs. 1-1 at 12, 17–19; 9.)

[5] Defendants first move to dismiss on grounds that Plaintiffs "failed to tender the amount of the debt due or allege that nothing was due under the loan instruments." (doc. 4-1 at 4.) They argue that Plaintiffs "cannot plead any set of facts which would entitle them to recovery on a breach of contract claim." (*Id.*) Plaintiffs do not assert a breach of contract claim, however. To the contrary, Plaintiffs allege that no contract was formed between them and BANA because BANA was not the "true lender" and did not provide them with "consideration." (*See* doc. 1-1 at 9–11, 21.)

7

17.45(4) (West 2007). To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)). Because the lending of money is not a good or service, a borrower whose sole objective is to obtain a loan is generally not a consumer under the DTPA. *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)). Nevertheless, a borrower may be a consumer if he seeks to acquire goods or services with the loan, and the goods or services form the basis of his DTPA claim. *See id.* (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

To satisfy the second element, the defendant's conduct must violate a specific laundry-list provision of § 17.46(b) of the DTPA or constitute "unconscionable action." *Robinson v. Match.com, L.L.C.*, No. 3:10-CV-2651-L, 2012 WL 5007777, at *8 (N.D. Tex. Oct. 17, 2012). "Reliance by the consumer is an element of DTPA claims that are based on ... section 17.46's laundry list violations." *Id.*; *see also* Tex. Bus. & Com. Ann. Code § 17.50(a)(1)(A)–(B) (to maintain an action for violations of § 17.46, the consumer must have "relied ... to the consumer's detriment" on the defendant's conduct).

Here, Plaintiffs assert they are consumers because "they sought and acquired a residential loan." (doc. 1-1 at 22.) They claim Defendants engaged in "false, misleading, or deceptive acts and/or practices" and committed "unconscionable act(s) in connection with the transaction" in

8

violation of §§ 17.46(b)(2), (3), (4), (14), and (24).[6] (*Id.*) "Defendants were a producing cause of their damages, as *will be* alleged with particularity." (*Id.* at 23.) (emphasis added).

Even assuming for purposes of this motion that Plaintiffs are "consumers" because the Property was a "good" they acquired with a mortgage loan, they still fail to state a viable DTPA claim because their allegations are factually unsupported. They do not identify in their complaint the specific actions by part of BANA, Fannie Mae, or the trust that purportedly violated § 17.46(b). (*See* doc. 1-1 at 22–23.) In their response to Defendants' motion, they maintain that Defendants violated the DTPA because they "knew BANA was not the 'lender' and deliberately omitted the name of the real lender/creditor that funded the transaction." (doc. 8 at 8.) Defendants allegedly made this "material misrepresentation" with the sole intent of causing Plaintiffs to rely on it to their detriment. (*Id.*) As discussed more fully below in relation to their fraud claims, Plaintiffs' contention that BANA was not the "true lender" and did not fund their loan appears to be based on little more than speculation. Moreover, athough they assert in their response that Defendants intended them to rely on this "misrepresentation," they fail to assert any facts raising a reasonable inference that they *did rely* on the misrepresentation to their detriment. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(A)–(B); *Robinson*, 2012 WL 5007777, at *8. Lastly, they do not state what their

---

[6] These subsections prohibit:
    (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
    (3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
    (4) using deceptive representations or designations of geographic origin in connection with goods or services;
    (14) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction; [and]
    (24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;
Tex. Bus. & Com. Code Ann. § 17.46(b)(2)–(4), (14), and (24) (West 2007).

9

damages were, and much less assert facts showing Defendants' conduct was the "producing cause" of any such damages. *See* Tex. Bus. & Com. Ann. § 17.50(a).

Because Plaintiffs' allegations fail to meet the pleading standards of *Iqbal* and *Twombly*, their DTPA claim is subject to dismissal for failure to state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

C.  **Fraud, Deceit, and Concealment**

Defendants next move to dismiss Plaintiffs' fraud claims for failure to meet the heightened pleading requirements of Rule 9(b). (doc. 4-1 at 6.)[7]

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-

---

[7] Defendants also argue that Plaintiffs' fraud claims are barred by the "economic loss doctrine." (doc. 4-1 at 5.) They reason that Plaintiffs' damages arise solely out of the alleged breach of the lending contract. (*Id.*) The equitable loss doctrine does not dispose of Plaintiffs' fraud claims because courts in the Fifth Circuit have held that this rule does not apply to fraud. *See, e.g.*, *Hurd*, 880 F. Supp. 2d at 764; *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, No. No. 4:10–CV–144, 2011 WL 1627115, at *12 (E.D. Tex. Apr.7, 2011) ("The economic loss rule does not apply to fraud claims.") (collecting cases); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. 1:07–CV–111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim because the parties had an independent duty not to commit the intentional tort of fraud); *Gruber v. Deuschle*, No. A:300–CV–0017–L, 2002 WL 523957, at *7 (N.D.Tex. Apr. 5, 2002) (holding that fraudulent inducement claims were not subject to the economic loss rule under Texas law).

CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

Plaintiffs assert fraud claims based on affirmative misrepresentations and fraudulent concealment. (doc. 1-1 at 21–22.)

### *1.  Fraud by Misrepresentation*

Plaintiffs base their claim for misrepresentation on three grounds: (1) BANA was not the "true lender"; (2) the assignment was fraudulent because BANA lacked authority to assign the deed of trust; and (3) the appointment of substitute trustee was fraudulent because BANA likewise lacked authority to appoint a substitute trustee. (*See* doc. 1-1 at 9–10, 13, 16, 21.)

#### a.  BANA's Status as the "True Lender"

Plaintiffs assert that Defendants engaged in fraud by "representing" that BANA was the "lender and sole beneficiary" under the deed of trust "even though Fannie Mae was making a public claim [that] it owned the [note] and [deed of trust] ... since March 1, 2010." (doc. 1-1 at 21.) "Defendants knew that [their] representations were false well before Plaintiffs offered to enter into

11

[a] contract[]" with BANA. (*Id.* at 21.) "Plaintiffs relied on Defendants' representations" and "sustained substantial damages," including $44,778.78 in mortgage payments they made throughout the course of the loan. (*Id.* at 21–22.) They request punitive damages arguing that "Defendants' conduct ... was extreme and outrageous." (*Id.* at 22.)[8]

Plaintiffs' contention that BANA was not the true lender is apparently premised on their belief that Fannie Mae acquired their loan seven days after they closed on it and three days before the deed of trust naming BANA as the Lender and beneficiary was recorded with the Dallas County Clerk. (*See* doc. 1-1 at 12–13, 46–47.) The note and deed of trust identified BANA as "Lender." (doc. 4-3 at 1, 5.) The deed of trust designated BANA as the beneficiary and granted BANA the right to sell and transfer the loan "one or more times without prior notice to [Plaintiffs]." (*See* docs. 1-1 at 33, 4-3 at 1, 14.) Accordingly, upon the loan closing, BANA could sell the loan to third parties, such as Fannie Mae, without obtaining Plaintiffs' approval or even issue them notice. (*See* doc. 4-3 at 14.)

Although Plaintiffs attempt to establish the "who, what, when, and where" as required by Rule 9(b), they fail to assert any facts showing *why* BANA's representation that it was the Lender was false. They also fail to allege or assert any facts supporting an inference that BANA *intended* Plaintiffs to act upon its purported misrepresentation. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) ("[S]imple allegations that defendants possess fraudulent intent will

---

[8] To support their fraud claim, Plaintiffs also allege they did not receive any consideration from BANA. (doc. 1-1 at 21.) Lack of consideration is not an element of fraud. *See Potter*, 607 F.3d at 1032–33. It is an element that "goes directly to the plaintiff's cause of action" for breach of contract. *S.M. Wilson & Co. v. Urban Concrete Contractors*, No. 04-06-00227-CV, 2007 WL 1423881, at *3 (Tex. App.—San Antonio May 16, 2007, pet. denied). Because Plaintiffs do not list a breach of contract claim in their complaint, and even maintain in their response that they "have not alleged a breach of contract claim" (doc. 8 at 3), the purpose of their repeated contention that they did not receive any consideration from BANA is unclear. (*See, e.g.*, docs. 1-1 at 9–10; 8 at 3.)

not satisfy Rule 9(b) … The plaintiffs must set forth *specific facts* supporting an inference of fraud[,] ... such as identify[ing] circumstances that indicate conscious behavior on the part of the defendant.") (citations omitted) (emphasis in *Dorsey*). Without more, their contentions that BANA was not the "true lender" fail to meet the pleading standards of Rule 9(b).

b.  BANA's Assignment of the Deed of Trust to BAC

Plaintiffs maintain that "if in fact" Fannie Mae or the securitization trust own their loan, BANA's assignment to BAC "must be deemed a ... fraudulent document." (doc. 1-1 at 13.)

Even assuming for purposes of this motion that Fannie Mae owned Plaintiffs' loan in June 2011, and the assignment document therefore falsely represented BANA's authority to assign the deed of trust, Plaintiffs' allegations could not plausibly entitle them to relief because they do not allege that Defendants made this purported misrepresentation *to them*, upon which *they* relied to their detriment. *See Huml v. Mortgage Elec. Registration Sys., Inc.*, No. EP-12-CV-00146-DCG, 2012 WL 5984821, at *5 (W.D. Tex. Oct. 25, 2012) (holding that the plaintiffs "fail[ed] to state a claim" for fraud under Rule 12(b)(6) because "the amended complaint nowhere state[d] facts to suggest that [the] Defendants used such [allegedly fraudulent] documents in connection with the alleged foreclosures against them personally"); *Grisham v. Deutsche Bank Trust Co. Americas*, No. 4:11-CV-3680, 2012 WL 2568178, at *4 (S.D. Tex. June 28, 2012) (dismissing fraud claim for failure to state a claim where the plaintiff alleged that the defendant "committed fraud by manufacturing documentation to support its alleged ownership of the Note" but he did "not contend that [the defendant] made this material representation to *him*") (emphasis in *Grisham*).

Moreover, Plaintiffs request injunctive relief to prevent Defendants from foreclosing on the Property and a "full and accurate accounting" to determine which Defendant has a valid interest in

13

it. (doc. 1-1 at 20.) Instead of reliance, these requests indicate Plaintiffs' attempt to contest BANA's assignment to BAC.[9] Their claim fails for this additional reason. *See Olufemi-Jones v. Bank of Am., N.A.*, No. 3:12-CV-3428-L, 2013 WL 1482544, at *6 (N.D. Tex. Apr. 10, 2013) (adopting recommendation of Mag. J.) (holding that the plaintiff's fraud claim failed "as a matter of law" because she did not show justifiable reliance given that she "retained counsel to act on her behalf in asserting her rights in the property" against the defendant's claim).

c. BANA's Appointment of Substitute Trustee

Plaintiffs concede that BANA could "at best" be Fannie Mae's mortgage servicer. (doc. 1-1 at 16.) They argue that even in that capacity, BANA lacked authority to appoint a substitute trustee, and its appointment of substitute trustee in June 2011 was therefore fraudulent. (*Id.*)

The deed of trust expressly granted Lender the right to remove and appoint substitute trustees at any time, with or without cause, and "without the necessity of any formality" other than a written designation. (doc. 4-3 at 15.) In addition, the Texas Property Code provides:

> Notwithstanding any agreement to the contrary, a mortgagee may appoint or may *authorize a mortgage servicer* to appoint a substitute trustee or substitute trustees to succeed to all title, powers, and duties of the original trustee. A mortgagee or mortgage servicer may make an appointment or authorization under this subsection by power of attorney, corporate resolution, or other written instrument.

Tex. Prop. Code Ann. § 51.0075(c) (West 2009) (emphasis added). Accordingly, even if Fannie Mae or the trust owned Plaintiffs' loan in June 2011, they could authorize BANA, as the mortgage servicer, to execute an appointment of substitute trustee via its attorney-in-fact. *See id.* Plaintiffs therefore fail to state a fraud claim under Rule 12(b)(6) on this ground.

---

[9] Citing to precedent from the Texas Supreme Court, the Fifth Circuit has recently held that only "the defrauded principal" (i.e., the lender/owner of the deed of trust) rather than the debtor, can challenge an assignment of a deed of trust executed by "a person fraudulently purporting" to have authority to execute the assignment. *See Reinagel*, 2013 WL 3480207, at *2 (citing to *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976)).

14

In conclusion, because Plaintiffs' allegations fail to meet the pleading standards of Rules 9(b) and 12(b)(6), their fraud claim based on affirmative misrepresentations is dismissed.

### 2. *Fraudulent Concealment*

Fraudulent concealment is "a subcategory of fraud because the omission or non-disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose." *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.*, 217 S.W.3d 653, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). A duty to disclose exists when: (1) the parties have a confidential or fiduciary relationship; (2) the defendant voluntarily makes a representation, which gives rise to the duty to disclose the whole truth; (3) the defendant makes a representation, which gives rise to the duty to disclose new information (of which he later becomes aware) that makes the earlier representation misleading or untrue; or (4) the defendant makes a partial disclosure and conveys a false impression, which gives rise to the duty to correct the false impression. *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 630 (S.D. Tex. 2010) (citing *Four Bros. Boat Works*, 217 S.W.3d at 670–71).

Here, Plaintiffs assert that "Defendants concealed from Plaintiffs the fact that they knew BANA was not the actual 'lender' who funded the transaction." (doc. 1-1 at 21.) As previously discussed, this allegation is conclusory and fails to give rise to an inference of fraud. In addition, Plaintiffs do not allege or assert facts showing they were in a confidential or fiduciary relationship with Defendants, or that Defendants otherwise owed them a duty to disclose information. Neither do they allege Defendants breached such a duty. Plaintiffs' claim for fraudulent concealment is therefore dismissed for failure to state a claim. *See Bittinger*, 744 F. Supp. 2d at 630 (dismissing with prejudice the plaintiff's claim for fraudulent concealment where he "ha[d] alleged no facts

establishing either a duty to disclose on the part of the defendants that was breached or any affirmative misrepresentations").[10]

D. **Declaratory Judgment Action**

Defendants seek dismissal of Plaintiffs' declaratory judgment action on grounds that "Plaintiffs have completely failed to state any underlying claims upon which relief can be granted to support" the declarations they seek. (doc. 4-1 at 6.)

Plaintiffs seek declaratory relief under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code. (*See* doc. 1-1 at 23–24.)[11]

"The Texas act is a procedural, rather than substantive, provision, and would generally not apply to [an] action" that has been removed based on diversity jurisdiction. *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012) (citing to *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 209–10 (5th Cir. 1998)). However, Plaintiffs' declaratory judgment action may be construed as arising under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202. *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought

---

[10] In their introduction, Defendants argue that "all" of Plaintiffs' claims are based on their "misguided argument that Defendants lack standing to collect on the note or to enforce the deed of trust," which is a variation of the "split-the-note" theory. (doc. 4-1 at 2.) Plaintiffs' allegation that the securitization extinguished the note by "de-recognizing" it from the Lender's balance sheet could be said to implicate the "split-the-note" theory. *See Preston*, 2013 WL 1091272, at *12 (finding that the "split-the-note" theory was implicated by the plaintiffs' contention that the securitization of their note changed its nature from a negotiable instrument to a stock or bond). Nevertheless, the Recommendation does not discuss Defendants' argument because it does not appear that Plaintiffs have based any of their claims on the "split-the-note" theory. (*See* doc. 1-1 at 5–29.)

[11] Plaintiffs seek numerous declarations, including that: (1) "BANA [was] falsely named as the 'lender' on the Note and [deed of trust] without ever having provided funding for the transaction"; (2) BANA lacked authority to assign the deed of trust or appoint a substitute trustee; (3) "the Note and [deed of trust] have taken two distinctly separate paths"; and (4) the note was "securitized into the 2010-28 Trust." (doc. 1- at 23–24.)

16

under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201 (West 2010). The Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.*

Here, given Plaintiffs' failure to state a viable claim for relief against Defendants or show that a genuine controversy exists between the parties, their declaratory judgment action is also subject to dismissal. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *see also Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not factually pleaded a plausible substantive claim).

**E.     Injunctive Relief**

Defendants argue that "Plaintiffs' claim for injunctive relief fails as a matter of law because Plaintiffs come to the court with unclean hands" since "[i]t is undisputed that Plaintiffs failed to

fulfill their contractual obligation to timely pay the mortgage." (*See* doc. 4-1 at 7.)[12]

"[T]he doctrine of unclean hands is an affirmative defense that applies to a party seeking equitable remedies." *Moye v. Fed. Home Loan Mortgage Corp.*, No. CIV.A. H-12-0502, 2012 WL 3048858, at *3 (S.D. Tex. July 25, 2012) (citing *Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010)). Affirmative defenses are not appropriate grounds on which to dismiss a claim under a Rule 12(b)(6) motion, unless the facts giving rise to an affirmative defense appear "clearly on the face of the pleadings." *See Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)). Here, the unclean hands defense may not be considered with Defendants' motion to dismiss because Plaintiffs do not allege, and nothing in the pleadings indicates, that they defaulted on their mortgage payments. Plaintiffs contend that they made mortgage payments amounting to approximately $44,778.78 throughout the course of their loan. (doc. 1-1 at 21–22.)

Nevertheless, because Plaintiffs' substantive claims are subject to dismissal on the merits, they cannot meet the requirements for obtaining injunctive relief. *See Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (holding that to obtain injunctive relief, "[a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits'") (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). Accordingly, Plaintiffs' request for injunctive relief is denied.

### F.     **Attorney's Fees**

Plaintiffs request "reasonable and necessary" attorney's fees pursuant to § 37.009 of the Tex. Civ. Prac. & Rem. Code. (doc. 1-1 at 27.)

---

[12] Plaintiffs request a TRO and a temporary and permanent injunction to restrain "Defendants or their agents from executing a Substitute Trustee's Sale or otherwise selling or taking possession of the [Property]." (doc. 1-1 at 25–27.)

18

"As a general rule, attorney's fees are not recoverable in Texas unless provided for by contract or by statute." *Lopez v. Los Cielos Homeowners Ass'n, Inc.*, No. 11-11-00102-CV, 2013 WL 1636433, at *2 (Tex. App.—Eastland Apr. 11, 2013) (citing *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992)). "Under section 37.009 of the civil practice and remedies code, a trial court can award attorney's fees to the prevailing party in a declaratory judgment action, ... if the trial court believes such fees to be reasonable and necessary and the award of such fees to be equitable and just." *Cardiac Perfusion Servs., Inc. v. Hughes*, 380 S.W.3d 198, 211 (Tex. App.—Dallas 2012, pet. filed) (citing Tex. Civ. Prac. & Rem. Code § 37.009). Because Plaintiffs are not the "prevailing party" in this case, their request for attorney's fees under Tex. Civ. Prac. & Rem. Code § 37.009 is denied. *See id.*

### III. OPPORTUNITY TO AMEND

Given the consequences of dismissal on the complaint alone, and the preference for adjudication on the merits, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *NetVet Grp. v. Fagin*, No. 3:10-CV-1934-BH, 2011 WL 2601526, at *8 (N.D. Tex. July 1, 2011) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)); *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.). Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, and the plaintiff has otherwise had ample opportunity to amend the complaint. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal

19

with prejudice is also appropriate if the court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Plaintiffs have not amended their complaint since filing this action in state court. Although they timely responded to Defendants' motion to dismiss (docs. 7–9), it does not appear that they have stated their best case to the Court with respect to any of their claims. Plaintiffs may therefore file an amended complaint that sufficiently states a claim for relief within 14 days from the date of this memorandum opinion and order.

## IV. CONCLUSION

Defendants' motion to dismiss is **GRANTED.** If Plaintiffs do not file an amended complaint that sufficiently states a claim for relief within 14 days from the date of this memorandum opinion and order, a final judgment will be entered in this case and their claims against Defendants will be dismissed with prejudice.

**SO ORDERED** on this 26th day of July, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE